Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
E. Tory Beardsley (SBN 031926)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:     rob@hbsslaw.com
             johnd@hbsslaw.com
             toryb@hbsslaw.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa A. Nutt, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>Nationwide Insurance Company of America, an Ohio corporation, Nationwide Affinity Insurance Company of America, an Ohio corporation, Nationwide Assurance Company, an Ohio corporation, Nationwide General Insurance Company, an Ohio corporation, Nationwide Mutual Insurance Company, an Ohio corporation, Nationwide Property and Casualty Insurance Company, an Ohio corporation, ALLIED Property and Casualty Insurance Company, an Iowa corporation, AMCO Insurance Company, an Iowa Corporation, Depositors Insurance Company, an Iowa corporation, Titan Insurance Company, a Michigan corporation, Victoria Fire & Casualty Company, an Ohio corporation,<br><br>                    Defendants. | Case No. _<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1
2

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................ 1

II.     PARTIES ............................................................................................ 4

III.    JURISDICTION AND VENUE ........................................................... 5

IV.     GENERAL ALLEGATIONS AS TO ARIZONA LAW ........................ 6

V.      NATIONWIDE IMPROPERLY REFUSES TO DISCLOSE AND STACK
        NUTT'S COVERAGE ........................................................................ 9

VI.     DEFENDANTS' MISCONDUCT REGARDING STACKING IS SYSTEMIC .. 20

VII.    CLASS ACTION ALLEGATIONS ....................................................... 26

FIRST CLAIM FOR RELIEF (DECLARATORY JUDGMENT) .................................. 30

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT) ................................... 30

THIRD CLAIM FOR RELIEF (BAD FAITH AS TO THE CLASS) ............................. 31

PRAYER FOR RELIEF .......................................................................................... 34

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

125792452.1

CLASS ACTION COMPLAINT

## I.    INTRODUCTION

1.    Under Arizona law, auto insurers must permit their customers to stack policies or coverages for uninsured and underinsured ("UM," "UIM," or "UM/UIM") motor vehicle accident claims unless the insurers comply with two simple requirements: Insurers must both (1) "expressly and plainly limit stacking in the policy" with "unambiguous language plainly disavowing the possibility of stacking," and (2) "satisfy the notice requirement [of A.R.S. § 20-259.01(H) by] informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1148 ¶ 11 (Ariz. 2023), *quoting* A.R.S. § 20-259.01(H). Here, Defendants failed to meet both requirements and yet failed to stack coverages, resulting in underpayments to Plaintiff and the class.

2.    "Stacking" refers to "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012).[1] UM/UIM coverage is a personal coverage—it covers the person, not the vehicle. When there are multiple vehicles insured under one or more policies, multiple UM/UIM coverages exist. *See Franklin*, 532 P.3d at 1146, 1151, ¶¶ 2, 24. Unless the insurer complies with A.R.S. § 20-259.01(H), those coverage limits can be added together to provide "stacked" benefits for a single claim. *Id.* In other words, each separate coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the aggregated (stacked) coverage limit is determined by adding together each vehicle's UM or UIM coverage.

---

[1] *See also Rashid v. State Farm Mut. Auto. Ins. Co.*, 162, Ariz. 270, 272 n.2, 787 P.2d 1066, 1068 n.2 (1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer"); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 258-60, 963 P.2d 334, 337-39 (App. 1998) (stacking occurs when "all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his actual loss where a single policy is not sufficient to make him whole;" the insureds' "benefit of the bargain is the cumulative UIM limit . . . Thus, when their damages are higher than the limits of one policy, the other policies can be tapped to make up the difference") (internal quotations omitted).

3.      The requirement that insurers inform each insured claimant of their right to select one policy or coverage empowers insured claimants to make informed choices about coverage. It ensures that insured claimants are fully aware of their options and rights, particularly in complex situations involving multiple policies and coverages.

4.      Beyond the obligations of A.R.S. § 20-259.01(H), when an insured is injured and presents a first-party claim, the duty of good faith and fair dealing requires an insurer to meet several crucial duties: For example, it must (1) reasonably investigate the claim and applicable law; (2) work to find all available coverage for the insured; (3) identify and fully disclose all pertinent benefits, coverages, and policy provisions; (4) inform the insured accurately about available coverages and benefits; (5) avoid mispresenting or concealing any pertinent benefits, coverages, or policy provisions; (6) avoid requesting a release that extends beyond the subject matter that gave rise to a claim payment; (7) construe the policy in accordance with known law; (8) treat its insured fairly and reasonably; and (9) give the insured's interests equal consideration.

5.      In handling UM/UIM claims for Plaintiff and other insureds with multiple covered vehicles under the applicable policies, Defendants breached each of these duties as well as the insurance contracts themselves.

6.      Plaintiff brings this action on behalf of all insureds who were deprived of their right to stack benefits by Defendant Nationwide Insurance Company of America and other linked insurance companies under common management, sharing a common core of operations, or acting pursuant to common, communicated principles of policy interpretation and claims adjustment. Under A.R.S. § 20-259.01(H), "insurer" includes "every insurer within a group of insurers under a common management," thereby implicating all such insurers in the rights and duties set forth in the statute and allowing certain acts of one insurer to inure to the benefit of other insurers because they are under common management. Additionally, the Defendants share a common core of claims handling operations, procedures, and personnel that does not vary materially from one underwriting company to the next. The admitted and established relationship between

125792452.1

Defendants in their management, legal, and operational relations—as well as the fact that their rights and duties intersect because they are under "common management" for purposes of A.R.S. § 20-259.01(H)—establishes that the entities are "juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), *cert. denied*, 540 U.S. 812 (2003) (quoting *La Mar v. H&B Novelty & Loan Co*., 489 F.2d 461, 466 (9th Cir. 1973)).[2]

7.     As a matter of uniform and standard practice and procedure, Defendant Nationwide Insurance Company of America applied a single UM/UIM coverage limit to Plaintiff's claim even though Defendant Nationwide Insurance Company of America neither included clear and unambiguous language disavowing the customer's ability to stack multiple coverages on the policy, nor informed the class members of the right to select which coverage to apply to the accident by including that right in the policy or timely advising class members of that right in writing. Similarly, none of the other Defendants complied with either of the statutory requirements of A.R.S. § 20-259.01. More precisely, no Defendant (1) included clear and unambiguous policy language expressly and plainly disavowing the possibility of stacking, or (2) informed the customer of the right to select which coverage to apply to the accident under either of the methods prescribed by statute.

8.     Plaintiff is an insured under a Nationwide Insurance Company of America policy purchased by her, and she brings this action pursuant to (a) 28 U.S.C. §§ 2201 & 2202 for a declaratory judgment regarding her rights and the rights of the Class under the

---

[2] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co*., 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal*., 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

- 3 –

applicable auto insurance policy or policies ("the Nationwide Policy" or "the Nationwide Policies") and (b) state law based on diversity jurisdiction.

9.    Regarding Plaintiff specifically, Defendant Nationwide Insurance Company of America was responsible for fully disclosing, applying, and paying UM/UIM coverage up to the stacked limits required by Arizona law and the properly construed insurance policy but failed to do so. Having failed to qualify for the anti-stacking opportunity permitted by law, having failed to disclose, provide, pay, and not conceal and misrepresent the existence of stacked coverages to its insureds, and having failed to notify the insured of her right to select, Defendant Nationwide Insurance Company of America breached its contractual, good faith, and legal duties to its customers, including underpaying the benefits due.

## II.    PARTIES

10.    Plaintiff Lisa A. Nutt ("Ms. Nutt" or "Plaintiff") is a resident and citizen of Arizona.

11.    Defendant Nationwide Insurance Company of America ("Nationwide America") is an insurance company incorporated under the laws of Ohio, with its principal place of business in Ohio, but which does business in the state of Arizona.

12.    The remaining Defendants (collectively with the above-referenced insurer, "Nationwide" or "Defendants") are insurance companies selling property & casualty insurance in Arizona and, upon information and belief, they (1) rely upon the same claims handling operations, procedures, and personnel as Nationwide America and (2) consider themselves to be under "common management" within the meaning of A.R.S. § 20-259.01(H) with respect to Nationwide America and each other, comprising the following entities:

a.    Nationwide Affinity Insurance Company of America, an insurance company incorporated under the laws of Ohio and domiciled in Ohio and doing business in Arizona;

125792452.1

b.      Nationwide Assurance Company, an insurance company incorporated under the laws of Ohio and domiciled in Ohio and doing business in Arizona;

c.      Nationwide General Insurance Company, an insurance company incorporated under the laws of Ohio and domiciled in Ohio and doing business in Arizona;

d.      Nationwide Mutual Insurance Company, an insurance company incorporated under the laws of Ohio and domiciled in Ohio and doing business in Arizona;

e.      Nationwide Property and Casualty Insurance Company, an insurance company incorporated under the laws of Ohio and domiciled in Ohio and doing business in Arizona;

f.      ALLIED Property and Casualty Insurance Company, an insurance company incorporated under the laws of Iowa and domiciled in Iowa and doing business in Arizona;

g.      AMCO Insurance Company, an insurance company incorporated under the laws of Iowa and domiciled in Iowa and doing business in Arizona;

h.      Depositors Insurance Company, an insurance company incorporated under the laws of Iowa and domiciled in Ohio and doing business in Arizona;

i.      Titan Insurance Company, an insurance company incorporated under the laws of Michigan and domiciled in Ohio and doing business in Arizona; and

j.      Victoria Fire & Casualty Company, an Ohio corporation, an insurance company incorporated under the laws of Ohio and domiciled in Ohio and doing business in Arizona.

### III.   JURISDICTION AND VENUE

13.    Plaintiff is a citizen of Arizona. Defendants, respectively, are citizens of Iowa, Michigan, and Ohio. Therefore, complete diversity exists.

14.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $125,000 in

125792452.1

stacked coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiff and the Defendants are citizens of different states. This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members, the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists.

15.     Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims described herein occurred within this District and the Nationwide Policies were issued in this District.

16.     Whenever it is alleged in this Complaint that Nationwide did any act or thing, it is meant that Nationwide and its agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of Nationwide or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Nationwide and its officers, agents, servants, employees or representatives. Specifically, Nationwide is liable for the actions of its affiliates, officers, agents, servants, employees, and representatives.

## IV.    GENERAL ALLEGATIONS AS TO ARIZONA LAW

17.     Arizona's statute governing UM/UIM coverage is A.R.S. § 20-259.01. It requires auto insurers to offer UM and UIM coverage on each insured vehicle and governs the terms of that coverage.

18.     Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g.*, *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 270 (Ariz. 2008); *Sharp*, 277 P.3d 192, at 193, 197. The UMA has "a remedial purpose and must be construed liberally in favor of coverage." *Id.* at 197 ¶ 18 (quoting *Taylor v. Travelers Indem. Co. of Am.*, 9 P.3d 1049 (Ariz. 2000)).

19.     Subsection (H) of A.R.S. § 20-259.01, as amended in 1997, allows insurers to draft their policies to prohibit stacking of UIM coverages but prescribes a strict method

for doing so. Insurers wishing to prohibit stacking must "expressly and plainly limit stacking in the policy" with "unambiguous language plainly disavowing the possibility of stacking." *Franklin*, 532 P.3d at 1148 ¶ 11. In addition, they must either draft the policy to "contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or absent such policy language, "within thirty days after the insurer receives notice of an accident, . . . notify the insured in writing of the insured's right to select one policy or coverage." *Id.* at 1148 ¶¶ 10-11 (quoting A.R.S. § 20-259.01(H)).

20.    Because Subsection (H) uses the word "may," it is not self-executing; rather, it "permits" or "authorizes" an insurer to take affirmative steps so that only one "policy or coverage" applies. *Sharp*, 277 P.3d at 196; *see also Franklin*, 532 P.3d at 1148 ¶ 10 ("Insurers may limit stacking, but insurers must satisfy the statute's notice requirement.") (internal quotation omitted); *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 897 P.2d 631, 633 (Ariz. 1995) ("this provision is not self-executing because its wording is merely permissive"); *Hanfelder v. GEICO Indem. Co.*, 422 P.3d 579, 581 ¶ 8 (Ariz. App. 2018) ("Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations.").

21.    The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple UIM coverages for the same accident." *Sharp*, 277 P.3d at 196 ¶ 15.

22.    Subsection (H) is not exclusively limited to circumstances where multiple policies exist; it applies to multiple policies or coverages, and therefore to the stacking of UM/UIM coverages under both multiple policies and a multi-vehicle insurance policy. *Franklin*, 532 P.3d at 1153; *see also Heaton v. Metro. Grp. Prop. and Cas. Ins. Co.*, No. 2:21-CV-00442-SRB, at *7 (D. Ariz. Oct. 19, 2021) ("[M]ultiple coverages exist when multiple vehicles are insured under a single policy that contains UM/UIM coverage.").

CLASS ACTION COMPLAINT

23.     Under Subsection (H), an insurer cannot prevent stacking if it fails to include plain, express, and unambiguous policy language that prohibits and disavows the possibility of stacking. *Franklin,* 532 P.3d at 1148 ¶¶ 10-11.

24.     Also, to limit stacking under Subsection (H), "insurers must . . . satisfy the notice requirement [by]informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident. *Id.* (quoting § 20-259.01(H)); *see also Heaton,* 2021 WL 6805629 at *8 ("Having found that [plaintiffs] have multiple UM/UIM coverages under the statute by virtue of insuring multiple vehicles, the Court concludes that both [plaintiffs] may stack their available coverages because [the insurer] did not adhere to the requirements of A.R.S. § 20-259.01(H) to prevent stacking."); *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681-PHX, 2013 WL 4478697, at *2 (D. Ariz. Aug. 20, 2013) (denying insurer's effort to avoid stacking UIM coverages, and stating: "Failure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law.").

25.     Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing owed to the insured. Under the contractual covenant of good faith and fair dealing, an insurer must deal fairly with an insured, providing fair and honest treatment, and giving in all matters equal consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 726 P.2d 565, 572-73 (Ariz. 1986).

26.     Among other things: "The carrier has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 ¶ 21 (Ariz. 2000).

27.    The duty of good faith and fair dealing, apart from the responsibility to promptly pay covered claims, also "encompasses some obligation to inform the insured about the extent of coverage and his or her rights under the policy and [must] do so in a way that is not misleading." *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 277 P.3d 789, 800 ¶ 54 (Ariz. App. 2012) (citing *Rawlings*, 726 P.2d at 572-73).

## V.    NATIONWIDE IMPROPERLY REFUSES TO DISCLOSE AND STACK MS. NUTT'S COVERAGE

28.    On August 11, 2021, Jason Alimena was operating a car that failed to yield and collided with a motorcycle driven by Cesar Medina, who (the police report indicated) was driving too fast for conditions.

29.    Ms. Nutt was a helmeted passenger on the motorcycle and was thrown into the air by the force of impact.

30.    Mr. Alimena and/or Mr. Medina were negligent in causing the accident, and are solely or comparatively at fault for causing the accident.

31.    As a result of the accident, Ms. Nutt sustained severe injuries, with medical specials exceeding $125,000.

32.    Mr. Medina, on information and belief, had no liability insurance applicable to the accident.

33.    Mr. Alimena had liability insurance under two auto policies with GEICO with limits totaling $325,000. GEICO, on its insureds' behalf, settled with Ms. Nutt for payment of those limits.

34.    Given the severity of Ms. Nutt's injuries from the accident, her damages exceeded the amount of liability insurance available to Mr. Alimena, who therefore was underinsured as to Plaintiff Nutt. *See* A.R.S. § 20-259.01(G).

35.    To protect herself and her guests and family members from uninsured or underinsured tortfeasors, Plaintiff had purchased UM/UIM insurance. At the time of loss, she was insured under a Nationwide America auto insurance policy that insured six vehicles: a 2012 Ford Mustang, a 1970 Chevrolet C10, a 2006 Dodge Ram, a 2010 Audi

A5, a 1995 Toyota Tacoma, and a 2007 Toyota Prius. This policy number was 7202J 035280 ("the Nutt Nationwide Policy" or "Plaintiff's Policy").

36.    Each vehicle's coverage provided Plaintiff with UIM benefits of $25,000 per person and $50,000 per occurrence.

37.    Nationwide America was notified of the accident, opened a claim, and assigned a claim number of 513981-GM.

38.    Thereafter, on October 15, 2021, Ms. Nutt's counsel, Lerner & Rowe, wrote Nationwide America a letter, referencing claim number 513981-GM, and advising Nationwide America that Ms. Nutt was injured because of the accident.

39.    In the "Underinsured Motorists Coverage - Arizona" endorsement to Plaintiff's Policy, Nationwide America agreed to pay as follows:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury": 1. Caused by an accident; and 2. Sustained by an "insured".

40.    In the "Uninsured Motorists Coverage - Arizona" endorsement to Plaintiff's policy, Nationwide America agreed to Pay as follows:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury": 1. Caused by an accident; and 2. Sustained by an "insured".

41.    On July 28, 2022, Plaintiff's counsel wrote Nationwide America, demanding "the immediate tender of all applicable underinsured motorist policy limits" under Plaintiff's Policy. The letter included the police report, medical records, and medical bills.

42.    At that time, Nationwide America knew (a) Ms. Nutt was admitted into Banner University Medical Center Tucson for evaluation and treatment of her accident injuries, which the treaters described as "polytraumatic;" (b) her injuries included a comminuted left shoulder fracture, laceration of and debris in her left forearm and left knee, a lacerated liver, and multiple other lacerations and abrasions; (c) she underwent multiple

CLASS ACTION COMPLAINT

surgical procedures while hospitalized; and (d) her accident-related medical bills exceeded $125,000.

43.    Plaintiff Nutt's damages attributable to the tortfeasors' fault in the accident exceeded the combined amounts of the tortfeasors' bodily injury liability coverage and the UIM coverages on the six vehicles insured under the Nutt Nationwide Policy.

44.    The Nationwide Policy under which Plaintiff was insured is Nationwide's standard form Policy for personal (i.e., non-commercial) auto policies.

45.    The Nationwide Policy does not include clear and unambiguous language expressly and plainly disavowing the possibility of stacking. As used herein, the "Nationwide Policy" or the "Nationwide Policies" means any personal auto policy issued to an Arizona insured by any and all Nationwide entities under common management. Every one of these entities' policies fail to include clear and unambiguous language expressly and plainly disavowing the possibility of stacking.

46.    The Nationwide Policy also fails to include a statement informing the insureds of their "right to select one policy or coverage" as applicable to any one accident. As used herein, the "Nationwide Policy" or the "Nationwide Policies" means any personal auto policy issued to an Arizona insured by any and all Nationwide entities under common management. Every one of these entities' policies fail to include a statement informing the insureds of their right to select one UM/UIM coverage, as between multiple vehicles insured under their policies, in the event of a covered accident.

47.    The Nationwide Policy does not comply with A.R.S. § 20-259.01(H) because (a) it does not include clear and unambiguous language expressly and plainly disavowing the possibility of stacking, (b) it does not limit the UM/UIM coverage on each covered vehicle so only one "policy or coverage" shall be applicable to any one accident, and (c) it does not inform the insured, either in the policy itself or by letter within 30 days of notice of the insured event, of their right to select one UM/UIM coverage, as between multiple vehicles insured under the policy, in the event of a covered accident.

125792452.1

CLASS ACTION COMPLAINT

48.    The applicable endorsements for UM and UIM coverage in the Nationwide Policy merely state that the limit of liability for UM or UIM Coverage is what is "shown in the Declarations for each person," or subject to that limit, what is "shown in the Declarations for each accident," no matter how many vehicles are listed. For example, in the "Underinsured Motorist Coverage – Arizona" endorsement, the Nationwide Policy provides:

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is the maximum amount we will pay for "bodily injury" sustained by any one person in any one accident. That maximum amount includes any claim of other persons arising out of that "bodily injury".

Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

49.    Limit of Liability language, standing alone, does not preclude stacked Underinsured Motorist coverage. *See Franklin,* 532 P.3d at 1146 ¶ 2; *Lindsey*, 897 P.2d at 633; *Heaton,* 2021 WL 6805629.

50.    The applicable endorsements for UM and UIM coverage in the Nationwide Policy also state that if the named insured purchased "other policies" providing UM or UIM Coverage, only one such policy applies to any single accident; and the insured may select which applies, or if the insured fails to do so, the company will select one with the highest limit. For example, in the "Underinsured Motorist Coverage – Arizona" endorsement, the Nationwide Policy provides as follows:

**OTHER INSURANCE**

**A.** If there are other policies providing underinsured motorists coverage purchased by the named insured from us on vehicles not shown in the Declarations of this policy which apply to an accident, then only one of these policies shall be applicable to any single accident.

The named insured shall select which policy applies. If the insured fails to make such a selection, then we will select one of the policies with the highest possible limit.

**B.** Subject to paragraph **A.** above, in all other cases if there is other applicable underinsured motorists coverage under more than one policy, then we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable underinsured motorists limits. However, any underinsured motorists coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

51.    Elsewhere, the Nationwide Policy provides that if two or more Nationwide America policies apply to the same accident, the maximum limit under all such policies shall not exceed the highest limit under a single policy:

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

52.    The declarations page of the Nationwide policy also does not disavow stacking, nor does it inform the insured of their "right to select one policy or coverage."

53.    Nationwide also did not, within 30 days of being notified of the August 11, 2021 accident at issue here, send Plaintiff or any other insured under the Policy any written notice of Plaintiff's "right to select one policy or coverage."

54.    On August 24, 2022, at least ten months after receiving notice of the accident, Nationwide America wrote Plaintiff's counsel, acknowledging receipt of the UIM claim and purporting to (a) give Plaintiff the right to select which vehicle's UM or UIM coverage to apply and (b) disclaim any obligation to stack UM or UIM coverages:

CLASS ACTION COMPLAINT

125792452.1

**Important information about your policy**

Your policy insures multiple vehicles and you have purchased Underinsured/Uninsured Motorist coverage, with limits of 25,000/$50,000. In the event that a claim for Underinsured/Uninsured Motorist benefits is opened as a result of this loss, this notice is to inform you that only one set of coverage limits, as shown on the declarations page, is applicable to this loss. You may select which limit of coverage applies. If you fail to make such a selection, then the company will select the coverage with the highest limits. You may not add together, "stack" or otherwise combine limits of coverage shown therein for each vehicle.

55.     Under Arizona law, insurers like Nationwide America are not permitted to impose language after an accident that "expressly and plainly limit[s] stacking" because to "unilaterally limit coverage *after* the policy agreement's execution would violate basic principles of contract law that require additional consideration and mutual assent for changes to an existing contract." *See Franklin*, 532 P.3d at 1148, 1151, ¶ 11 (emphasis in original). The August 24, 2022 letter's effort to disclaim stacking after the accident is therefore unenforceable to avoid stacking as to Ms. Nutt's UIM claim.

56.     As to the August 24, 2022 letter's purported notice of a right to select which vehicle's UM or UIM coverage will apply, A.R.S. § 20-259.01(H) requires insurers like Nationwide America to send any such letter within 30 days after the insurer is notified of the accident. *Id*. Nationwide America having sent that letter at least ten months after receiving notice of the accident in this instance, the purported notice language provides no basis therefore to avoid stacking as to Ms. Nutt's UIM claim.

57.     Nationwide America's August 24, 2022 letter was not only unenforceable to avoid stacking, it also affirmatively misrepresented, failed to disclose, and/or concealed the availability of or potential for stacked UM/UIM coverage.

58.     Accordingly, stacked Underinsured Motorist coverage for Plaintiff is permitted. *See* A.R.S. § 20-259.01(H); *Franklin,* 532 P.3d at 1146, 1148 ¶¶ 2, 11; *Heaton*, 2021 WL 6805629; *Schwallie*, 2013 WL 4478697.

125792452.1

59.    On September 29, 2022, Nationwide America tendered the UIM limit of $25,000 on one of Ms. Nutt's insured vehicles, along with a Release and Trust Agreement ("the Release"). The Release conditioned payment of the UIM limit of $25,000 on Ms. Nutt releasing and discharging Nationwide America "of and from all claims of whatsoever kind and nature . . . growing out of the . . . Underinsured Motorist Coverage" under Plaintiff's Policy "resulting or to result from" the accident.

60.    Nationwide America requested the Release despite knowing Ms. Nutt was entitled to the payment without signing a release, and that it would issue payment of that benefit even if she declined to execute the Release.

61.    Nationwide America, in requesting the signed Release, was violating Arizona law as well as attempting to evade and discourage any subsequent requests for stacked limits.

62.    Nationwide America's requested Release extended beyond the subject matter that gave rise to the claim payment, that is, payment of the single UIM limit.

63.    The Release, which Ms. Nutt signed, is void and unenforceable for lack of consideration, unconscionability, or violation of Arizona law.

64.    Alternatively, Nationwide America was obligated to and failed to fully disclose the nature of the claims Ms. Nutt was being asked to release.

65.    Nationwide America failed to adequately investigate, reasonably evaluate, and promptly pay stacked Underinsured Motorist coverage to Plaintiff.

66.    Nationwide America also failed to inform the Plaintiff of the availability of or potential for stacked Underinsured Motorist coverage in violation of Arizona law.

67.    Nationwide did not notify Plaintiff or any other class member that if the required notice was not sent within thirty days of the accident, Nationwide would, under Arizona law, owe to its insureds stacking of their various UM/UIM coverages unless the policy language itself satisfied the obligation owing under A.R.S. § 20-259.01(H), which is not the case here or for any other class member.

125792452.1

CLASS ACTION COMPLAINT

68.    Nationwide's silence in that regard, its written statement to Plaintiff and other class members that "[y]ou may not add together, 'stack' or otherwise combine" the UM or UIM limits under multiple insured vehicles, and its Policy and notice practice that failed to comply with A.R.S. § 20-259.01(H), collectively and individually, amount to a misrepresentation, failure to disclose, and/or concealment of the availability of or potential for stacked Underinsured coverage, in violation of Arizona law.

69.    Nationwide failed, as to stacked UM/UIM coverage, to identify and fully disclose all pertinent benefits, coverages, and policy provisions; failed to inform the insured accurately about available coverages and benefits; misled its insureds; and mispresented and concealed pertinent benefits, coverages, or policy provisions.

70.    Nationwide also failed, as to stacked UM/UIM coverage, to work to find all available coverage for the insured; failed to reasonably investigate the claim and applicable law; failed to construe the policy in accordance with known law; failed to treat its insured fairly and reasonably; failed to give the insured's interests equal consideration; and on information and belief, failed to conduct any investigation let alone undertake a reasonable coverage investigation of available coverage.

71.    As a general practice, whenever Nationwide fails to comply with its statutory obligation to advise its insureds in writing within 30 days after receiving notice of an accident that they have a right to select one policy or coverage, Nationwide does not provide stacked benefits unless specifically requested by the insured to do so.

72.    These were simple options—informing the insureds of their rights in the policy itself or by written notice within 30 days after notice of the accidents—and either approach would have precluded stacking the UM/UIM coverages on class members' vehicles covered under the Nationwide Policies.

73.    Nationwide, having failed to avail itself of either option under Arizona law, must stack the UM/UIM coverages for multiple vehicles insured under the Nationwide Policies.

125792452.1

CLASS ACTION COMPLAINT

74.     Nationwide never disclosed or provided stacked UIM coverages to Plaintiff and other class members. Nationwide, therefore, has denied Plaintiff benefits to which she is entitled under the Nationwide Policy and Arizona law.

75.     As a general practice, Nationwide does not disclose or provide stacked UM/UIM coverages to Plaintiff or class members under the Nationwide Policies after a covered accident.

76.     On information and belief, Nationwide on limited occasions in Arizona has acknowledged, tendered, or paid stacked UM or UIM limits when requested by the insured to do so.

77.     Nationwide has provided stacked limits to insureds who specifically requested it do so, in effect silencing the squeaky wheels while continuing to underpay Plaintiff and virtually all class members in violation of its contractual and legal duties as a first-party insurer.

78.     Nationwide knew or should have known that its policy interpretation and failures to disclose and pay stacked UM/UIM coverages violated Arizona law.

79.     Nationwide knew of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

80.     Defendant Depositors Insurance Company, for example, litigated a stacking issue in this Court in *Delaney v. Depositors Insurance Company*, case no. CV-15-02532-PHX-ROS, in which Judge Silver ruled:

> [T]he statute [A.R.S. § 20-259.01(H)] "is not self-executing." *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 897 P.2d 631, 633 (Ariz. 1995). Any insurer wishing to enforce an anti-stacking provision must include "additional policy language" setting forth the anti-stacking limitations. *Id.* Here, the Depositors policy does not contain any anti-stacking provision that would allow Depositors to refuse to pay a claim when an affiliated company has already paid out on the same claim. If Depositors wanted such a provision, it should have included one.

81.     Many other Arizona auto insurers (*e.g.*, Farmers, Bristol West, Progressive, USAA, State Farm, GEICO, Auto Owners and United) have drafted their auto policies (including single and multi-vehicle policies) to notify their insureds in writing of the right

to select which policy or coverage will apply. For example, the Bristol West policy provides:

> The limit of liability under this Part C is not increased if more than one vehicle is covered under this policy.
>
> In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available as Uninsured Motorist Coverage or Underinsured Motorist Coverage benefits.
>
> If multiple policies or coverages purchased from us by an insured person on different vehicles provide Uninsured Motorist Coverage or Underinsured Motorist Coverage to an accident or claim, then the insured person shall select one of these policies or coverages to apply. Only one coverage selected by the insured person shall apply.

82.    Nationwide knew or should have known of the efforts by other Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

83.    Nationwide chose not to follow those practices.

84.    Nationwide failed to pay Plaintiff and the Class stacked UM/UIM coverages to which they were entitled.

85.    Nationwide failed, as to Plaintiff and the Class, to investigate, identify, acknowledge, and disclose the existence of stacked UM/UIM coverages under the Nationwide Policies.

86.    Nationwide and its agents violated Administrative Code § 20-6-801(D)(1) and (D)(2) by failing to investigate, identify, acknowledge, and disclose stacked UM/UIM coverages under the Nationwide Policies.

87.    On information and belief, Nationwide received legal advice that its policy language and/or failure to give proper notice violated Arizona law, but Nationwide disregarded the advice it received and willfully failed to investigate and inform itself on Arizona law on stacked UM/UIM coverages, as to Plaintiff and the Class.

88.    On information and belief, Nationwide received legal advice regarding its obligations to provide stacked UM/UIM coverages and was advised that its failures to pay

stacked UM/UIM coverages likely violated Arizona law. Nationwide disregarded that legal advice.

89.    On information and belief, Nationwide received legal advice regarding requesting first party claimants to sign a release with payment of a single UM or UIM limit and was advised that doing so likely violated Arizona law. Nationwide disregarded that legal advice.

90.    On information and belief, Nationwide willfully concealed and misrepresented the existence of stacked UM/UIM coverages from Plaintiff and the Class.

91.    Nationwide has nonetheless failed to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law. Any insured who received the maximum amount of a single UM/UIM policy limit and who had other vehicles providing UM/UIM coverage would be entitled to notice of the additional coverage available and doubtless entitled to additional benefits.

92.    Nationwide's failures are both unreasonable, intentional, and in conflict with well-established Arizona law.

93.    Nationwide's failures also violate its duty to find coverage, to reasonably investigate the claim, disclose the proper law and facts, and not misrepresent or conceal pertinent policy provisions and benefits available under its policies.

94.    Nationwide's concealment of its statutory obligation and its actual coverage limits, and its unreasonable and unlawful refusal to investigate, identify, acknowledge, disclose and pay stacked UM/UIM coverages, have led to underpaying Plaintiff's UIM claim, as well as the claims of hundreds or thousands of other UM/UIM claims, and thus to Nationwide paying tens or hundreds of millions of dollars less for UM and UIM claims than its insureds are entitled to under the terms of their standardized policies and Arizona law.

125792452.1

## VI.  DEFENDANTS' MISCONDUCT REGARDING STACKING IS SYSTEMIC

95.    Plaintiff's Nationwide America policy is a standardized auto policy with the same or substantially similar provisions in relevant part as the auto policies used by all Nationwide during the relevant time period ("the Nationwide Policies").

96.    The Nationwide Policies do not comply with A.R.S. § 20-259.01(H) because (1) they contain no plain, express, and unambiguous disavowal of the possibility of stacking and (2) they do not inform the insured claimants of their right to select one UM/UIM coverage as between multiple vehicles insured under the policy in the event of a covered accident. As used herein, the "Nationwide Policies" means any auto policy issued to an Arizona insured by any and all Nationwide entities under common management, sharing a common core of operations, or acting pursuant to common, communicated principles of policy interpretation and claims adjustment. Every one of these entities' policies fail to include (a) clear and unambiguous language expressly and plainly disavowing the possibility of stacking and (b) a statement informing the insureds of their right to select one UM/UIM coverage, as between multiple vehicles insured under their policies, in the event of a covered accident.

97.    Nationwide, as a standard practice for many years, also did not advise insured claimants, in writing within 30 days of receiving notice of the covered accident, of their "right to select one policy or coverage" as required by A.R.S. § 20-259.01(H).

98.    Nationwide, having failed to avail itself of either option under Arizona law, must stack the UM/UIM coverages for multiple vehicles insured under the Nationwide Policies. *See* A.R.S. § 20-259.01(H); *Franklin*, 532 P.3d at 1146, 1148 ¶¶ 2, 11; *see also Heaton*, 2021 WL 6805629; *Schwallie*, 2013 WL 4478697.

99.    Nationwide knew of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

100.    As a standard practice, Nationwide chose not to comply with those requirements.

- 20 –

125792452.1

101.   As a standard practice, Nationwide failed to adequately investigate and reasonably evaluate stacked UM/UIM coverage to which Plaintiff and the Class were entitled.

102.   As a standard practice, Nationwide failed to pay, promptly or otherwise, Plaintiff and the Class stacked UM/UIM coverage to which they were entitled.

103.   As a standard practice, whenever Nationwide failed to comply with its statutory obligation to advise its insureds in writing within 30 days after receiving notice of an accident that they have a right to select one policy or coverage, Nationwide did not provide stacked benefits except, on information and belief, in the rare instance when specifically demanded by the insured claimant to do so.

104.   On information and belief, Nationwide on limited occasions in Arizona has acknowledged, tendered, or paid stacked UM or UIM limits in the rare circumstance when demanded by the insured claimant to do so.

105.   Nationwide did so voluntarily, having concluded the applicable Nationwide Policies provided stacked UM/UIM coverage, and without issuing a reservation of rights or advising its insured that it did not believe stacked UM/UIM coverage was available.

106.   Nationwide effectively silenced the squeaky wheels while continuing to underpay the vast majority Class members in violation of its contractual, good faith, and legal duties as a first-party insurer.

107.   As a matter of standard claims handling practice, if the insured claimant did not specifically request stacked Uninsured Motorist coverage or stacked Underinsured Motorist coverage, Nationwide only paid the single vehicle UM or UIM limit rather than stacked UM/UIM coverage.

108.   Nationwide did not notify Plaintiff or any other Class member that its Policies did not comply with A.R.S. § 20-259.01(H) and that if the required notice was not sent within 30 days of the accident, Nationwide would, under Arizona law, owe to its insured claimants stacked UM/UIM coverage.

125792452.1

109.    Nationwide knew or should have known that its failures to adequately investigate, reasonably evaluate, fully disclose, and promptly pay stacked UM/UIM coverage violated Arizona law.

110.    Nationwide has one of the largest market shares for private passenger automobile policies in Arizona and nationwide.

111.    Nationwide knew or should have known of the efforts by other major Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

112.    Nationwide chose not to follow those practices for its personal auto policies.

113.    On information and belief, Nationwide received legal advice as to whether it was complying with Subsection (H) and stacking rules as to private passenger automobile claims in Arizona.

114.    On information and belief, Nationwide received legal advice on whether it had any obligation to provide stacked UM/UIM coverage in Arizona.

115.    On information and belief, Nationwide received legal advice that its policy language violated Arizona law on stacking.

116.    On information and belief, Nationwide received legal advice that its failure to give proper notice violated Arizona law including Subsection (H).

117.    On information and belief, Nationwide received legal advice that its failure to pay stacked UM/UIM coverage likely violated Arizona law including Subsection (H).

118.    Nationwide disregarded the legal advice it received, except in the rare circumstance when the insured claimant demanded stacked UM/UIM coverage.

119.    Alternatively, Nationwide recklessly or willfully failed to investigate, evaluate, and inform itself on Arizona law on stacked UM/UIM coverage as to Plaintiff and the Class.

120.    Alternatively, Nationwide knew or should have known its policy interpretation as to stacked UM/UIM coverage violated Arizona law. Nationwide had actual knowledge of this, for example, from Judge Silver's ruling in the *Delaney* case.

121.    Nationwide's standard practice was to not inform its insureds of the availability of or potential for stacked UM/UIM coverage.

122.    Nationwide's standard practice, at certain points in time, was to send first party claimants a letter purporting to disclaim any obligation to stack UM or UIM coverages.

123.    Nationwide's standard practice, at certain points in time, was to send first party claimants a letter purporting to give them the right to select which vehicle's UM or UIM coverage to apply, even when Nationwide knew more than 30 days had passed since Nationwide was notified of the accident.

124.    Nationwide engaged in these standard practices despite (a) knowing, based on legal advice, that stacked UM/UIM coverage was available to its insureds under Arizona law, and (b) acknowledging, on information and belief, the existence of stacked UM/UIM coverage for the rare insured who demanded it.

125.    Nationwide affirmatively misrepresented, failed to disclose, and/or concealed the availability of or potential for stacked UM/UIM coverage in communications with UM/UIM claimants.

126.    In so doing, Nationwide failed, as to stacked UM/UIM coverage, to identify and fully disclose all pertinent benefits, coverages, and policy provisions; failed to inform the insured accurately about available coverages and benefits; misled its insureds; and mispresented and concealed pertinent benefits, coverages, or policy provisions.

127.    Nationwide also failed, as to stacked UM/UIM coverage, to work to find all available coverage for the insured; failed to adequately investigate and reasonably evaluate the claim and applicable law; failed to construe the Nationwide Policies in accordance with known law; failed to treat its insureds honestly, fairly and reasonably; forced insureds to go through needless adversarial hoops to achieve their rights under the policy; and failed to give the insureds' interests equal consideration.

128.    Any insured claimant who received the maximum amount of a single UM/UIM policy limit and who had other vehicles providing UM/UIM coverage was

entitled to notice of the additional coverage available and doubtless entitled to additional benefits.

129.    Nationwide and its agents violated Arizona Administrative Code ("AAC") § 20-6-801(D)(1) by failing to fully disclose to Plaintiff and the Class the availability of or potential for stacked UM/UIM coverage under the Nationwide Policies.

130.    On information and belief, Nationwide has a standard practice of disclosing to insureds who have had an accident the availability of or potential for other policy benefits they may be entitled to, such as medical payments coverage, collision, rental car, or rental car.

131.    Nationwide and its agents violated AAC § 20-6-801(D)(2) by concealing from Plaintiff and the Class the availability of or potential for stacked UM/UIM coverage under the Nationwide Policies.

132.    Good-faith claims handling required Nationwide to implement a standard practice of always informing insured claimants to whom a single limit of UM or UIM coverage is tendered (a) the availability of or potential for stacked UM/UIM coverage under the Nationwide Policies, (b) the insurer's practice of paying these claims when asked and supported by evidence, (c) additional monies may be owed to this claimant depending on the facts of their case, and (d) the claimant may submit additional documentation for that purpose, including medical bills and lost income.

133.    Nationwide does not have any such good faith standard practice.

134.    To the contrary, Nationwide had a standard practice of misrepresenting to Class members the potential for stacked UM/UIM coverage under the Nationwide Policies.

135.    When paying UM or UIM benefits, Nationwide and its adjusters had a standard practice of requesting the insured claimant sign a release of all claims in exchange for the payment.

136.    Nationwide did so despite knowing the insured is entitled to the payment without signing a release, and that it would issue payment of that benefit even if the insured declined to execute the release.

125792452.1

137. Nationwide and its agents violated AAC Code § 20-6-801(D)(5) by requesting its first party UM or UIM claimants to sign a release that extended beyond the subject matter that gave rise to the claim payment, that is, payment of the single UM or UIM limit.

138. Nationwide, in requesting the signed release, was attempting to evade and discourage any subsequent requests for stacked limits.

139. Any such releases are void and unenforceable for lack of consideration, unconscionability, or violation of Arizona law.

140. Alternatively, Nationwide was obligated to and failed to fully disclose the nature of the claims the claimant was being asked to release.

141. On information and belief, Nationwide also on occasion conditioned payment of stacked benefits on the claimant agreeing in the signed release that the payment of stacked benefits remain confidential.

142. Despite having paid stacking claims in Arizona and received legal advice on its stacking obligations in this State, Nationwide has failed to search and reopen its closed claim files to investigate, evaluate, and pay stacked UM/UIM coverage benefits it owes under Arizona law.

143. Nationwide knew or should have known that its standard claims handling practices as to stacking did not comply with Subsection (H).

144. Nationwide's actions were unreasonable, intentional, knowing, in reckless disregard of its insureds' rights, and in conflict with well-established Arizona law.

145. Nationwide's systemic misconduct described above has led to underpaying Plaintiff's UIM claim and thousands of other UM/UIM claims, and thus resulted in Nationwide paying tens or hundreds of millions of dollars less for UM and UIM claims than its insureds are entitled to under the terms of their standardized policies and Arizona law.

## VII. CLASS ACTION ALLEGATIONS

146. This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Plaintiff brings all claims herein individually and as a class action (for the class defined below), pursuant to Rule 23.

147. The "Class" consists of the following:

> From the earliest possible date provided by law to the date of judgment, all persons who (1) were insured under at least one policy insuring multiple vehicles issued in Arizona by any Defendant, and (2) who experienced a covered loss where the insured person received UM or UIM benefits and either:

> (1) the UM or UIM benefits were limited to the limits of coverage of a single vehicle, or

> (2) the UM or UIM benefits were reduced due to apportionment among multiple claimants, with the collective claim limited to the limits of coverage of a single vehicle.

148. The "Release Subclass" consists of the following:

> All Class members who were requested to sign or signed a release of all claims in exchange for payment of the UM or UIM benefits.

149. The "Bad Faith Subclass" consists of the following:

> All Class members whose breach of contract claims for stacked UM/UIM coverage are found by the Court to be barred by A.R.S. § 12-555.

150. While the exact number of members cannot be determined, the class consists at least hundreds of Arizona residents. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by Nationwide.

151. There are questions of fact and law common to the class, including the following:

> i.    Whether the Nationwide Policy complies with A.R.S. § 20-259.01, allowing Nationwide to preclude stacking;

125792452.1

CLASS ACTION COMPLAINT

ii.  Whether Nationwide failed to send timely notice to insureds after an accident of their right to select one UM/UIM policy or coverage;

iii. Whether Nationwide failed to stack UM/UIM policies or coverages;

iv.  Whether Nationwide knew or should have known its failure to pay stacked UM/UIM coverage violated Arizona law;

v.   Whether Nationwide disregarded the legal advice it received about stacking;

vi.  Whether Nationwide recklessly or willfully failed to investigate, evaluate, and inform itself on Arizona law on stacked UM/UIM coverages;

vii. Whether Nationwide or its agents systematically failed to fully disclose the availability of or potential for stacked UM/UIM coverage under the Nationwide Policies;

viii. Whether Nationwide or its agents systematically misrepresented, failed to disclose, and/or concealed the availability of or potential for stacked UM/UIM coverage under the Nationwide Policies in communications with insureds;

ix.  Whether, through the foregoing practice, Nationwide breached its contracts with its insureds;

x.   Whether, through the foregoing practice, Nationwide breached the implied covenant of good faith and fair dealing and violated statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2);

xi.  Whether, through the foregoing practice, Nationwide caused and will continue to cause harm to its insureds;

xii. Whether Nationwide is obligated to search or reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits they owe under Arizona law;

xiii. Whether Plaintiff and the Class are entitled to declaratory relief;

xiv. Whether Nationwide's above-referenced conduct as to the Class warrants an award of compensatory damages;

xv.  Whether Nationwide's above-referenced conduct as to the Class warrants an award of punitive damages; and

xvi. Whether Plaintiff and the class are entitled to an award of attorney's fees.

– 27 –

152.    There are additional questions of law and fact common to the Release Subclass, including the following:

xviii.    Whether Nationwide had an unlawful practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment;

xix.    Whether Nationwide had an unlawful practice of requesting first party claimants to sign a release that extends beyond the subject matter that gave rise to the claim payment, that is, payment of the single UM or UIM limit, in violation of AAC § 20-6-801(D)(5).

xx.    Whether any such signed releases are void and unenforceable for lack of consideration, unconscionability, or violation of Arizona law.

153.    There are additional questions of law and fact common to the Bad Faith Subclass, including the following:

xxi.    Whether Class members whose claims for stacked UM/UIM coverage are held to be barred by A.R.S. § 12-555 may join in the class-wide request for relief because of Nationwide's systematic concealment, misrepresentation, failure to fully disclose, and Nationwide's misleading behavior as to stacked UM/UIM coverage.

154.    Plaintiff has the same interests in this matter as all other members of the class, and her claims are typical of those of all members of the class. Plaintiff's claims are coincident with and not antagonistic to those of other class members she seeks to represent. Plaintiff and all class members have been harmed by Nationwide's common course of conduct as outlined herein. The harm to each class member was caused by Nationwide's wrongful conduct.

155.    Plaintiff is committed to pursuing this action and has retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the class members.

156.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)(A) because separate actions by individual class members would create a risk of

- 28 –

CLASS ACTION COMPLAINT

inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

157.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Nationwide's actions are generally applicable to the class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the class as a whole.

158.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

159.    Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of a key fact issue common to the Class—did Nationwide comply with Subsection (H) and did Nationwide's conduct constitute bad faith under Arizona law—will materially advance the litigation.

160.    Absent a class action, most of the members of the class will remain ignorant of their rights and/or find the cost of litigating their claims prohibitive. Therefore, they will have no effective remedy. The class treatment of common questions of law and fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Nationwide has misrepresented, failed to disclose, and/or concealed the rights of Class members and those class members will remain ignorant of their potential claims against Nationwide unless court-supervised notice is ordered.

161.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions involving the insurance industry. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of other respective Class members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of other members of the Class.

CLASS ACTION COMPLAINT

1
2

## FIRST CLAIM FOR RELIEF
## (DECLARATORY JUDGMENT)

3
4

162.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

5
6
7
8
9
10

163.    Plaintiff and the Class have standing to seek this relief because there is an actual controversy between the parties as to the proper interpretation and enforceability of the Nationwide Policies under Arizona law, the application of A.R.S. § 20-259.01(H) to this case, Nationwide's obligation to disclose and not misrepresent or conceal the existence of stacked UM/UIM coverages, and whether Plaintiff and the Class are entitled to stack UM/UIM coverages for multiple insured vehicles.

11
12
13
14
15
16
17
18
19

164.    Under the circumstances, Plaintiff and the Class are entitled to a judicial declaration of their rights under the Nationwide Policies, specifically that they are entitled to stacked UM/UIM coverage for multiple insured vehicles under the Nationwide Policies; that Nationwide is required to fully disclose and not mispresent or conceal the availability of or potential for stacked coverages to them; that any signed releases in exchange for payment of UM or UIM limits are void and unenforceable for lack of consideration, unconscionability, or violation of Arizona law; and that Nationwide is required to search and reopen its closed claim files to adequately investigate, reasonably evaluate, and promptly pay stacked UM/UIM coverage benefits.

20
21

165.    This claim arises out of contract and Plaintiff and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

22

## SECOND CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

23
24

166.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

25
26

167.    Each Class member (including Plaintiff) is a party to one or more of the standardized Nationwide Policies.

27
28

125792452.1

168.    Nationwide breached those contracts by failing to pay stacked UM/UIM coverage to Plaintiff and the Class.

169.    Nationwide further breached those contracts by failing to investigate, evaluate, and inform itself on Arizona law on stacked UM/UIM coverage; failing to fully disclose the availability of or potential for stacked UM/UIM coverage under the Nationwide Policies; misrepresenting, failing to disclose, and/or concealing the availability of stacked UM/UIM coverage in its communications with the Plaintiff and Class members; requesting releases in exchange for payments of UM or UIM limits; and denying the existence of any such stacked limits.

170.    The Class (including Plaintiff) has been and continues to be damaged by Nationwide's breaches of contract.

171.    This claim arises out of contract and Plaintiff and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

**THIRD CLAIM FOR RELIEF**
**(BAD FAITH AS TO THE CLASS)**

172.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

173.    Inherent and implied in the Nationwide Policies is a covenant of good faith and fair dealing owed to Plaintiff and the Class. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests. *See, e.g., Rawlings*, 726 P.2d at 572-73.

174.    The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Nationwide Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch*,

995 P.2d at 280 ¶ 22. Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings*, 726 P.2d at 576.

175.    Nationwide breached the duty of good faith and fair dealing by failing to adequately investigate its stacking obligations, reasonably evaluate those obligations, and promptly pay stacked UM/UIM coverage to Plaintiff and Class members.

176.    Nationwide did so despite knowing of, recklessly disregarding, or failing to investigate, evaluate, and inform itself of its obligation to do so under Arizona law and considering its failure to comply with Subsection (H).

177.    Nationwide knew of Subsection (H)'s requirements and its policies' failure to comply with that statute from, for example, Judge Silver's ruling in the *Delaney* case.

178.    Nationwide's knowledge of Subsection (H)'s application to multiple-vehicle policies and that the Nationwide Policies did not comply with that statute is established for example by its standard practice of sending first party claimants a letter categorically denying stacking and offering them a right to select one policy or coverage.

179.    The tort of bad faith also arises, independent of a claim denial or failure to pay, when the insurer fails to properly "inform the insured about the extent of coverage and his or her rights under the policy and do so in a way that is not misleading." *Nardelli*, 277 P.3d at 800 ¶ 54, citing *Rawlings*, 726 P.2d at 572-573. *See also Deese v. State Farm. Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1271 (Ariz. 1992) (Martone, J., concurring in the judgment) (describing Rawlings as follows: "In *Rawlings*, the contract claim was for fire insurance under the policy. The bad faith tort claim was for failing to disclose to the insured favorable information which would have helped the insured in a separate dispute with its neighbor. These were wholly different claims and thus Farmers' payment of the contract claim was irrelevant to the assertion of the bad faith tort claim. In that context, the contract

claim was not an essential ingredient of the tort claim.") (internal citations omitted); *Zilisch*, 995 P.2d at 279 ¶ 20 ("if an insurer acts unreasonably in the manner in which it processes a claim, it will be held liable for bad faith without regard to its ultimate merits") (internal quotation omitted).

180.    For example: "No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented." AAC § 20-6-801(D)(1), quoted in *Nardelli*, 277 P.3d at 800 ¶ 55.

181.    As a second example: "No agent shall conceal from first party claimants' benefits, coverages or other provisions of any insurance policy or insurance contract when the benefits, coverages or other provisions are pertinent to a claim." AAC § 20-6-801(D)(2), quoted in *Nardelli*, *supra*.[3]

182.    As a third example: "No insurer shall request a first party claimant to sign a release that extends beyond the subject matter that gave rise to the claim payment." AAC § 20-6-801(D)(5).

183.    Nationwide breached the duty of good faith and fair dealing by failing to fully disclose the availability of or potential for stacked UM/UIM coverage under the Nationwide Policies; misrepresenting, failing to disclose, and/or concealing stacked UM/UIM coverage in its communications with Plaintiff and Class members; requesting releases in exchange for payments of UM or UIM limits; and denying the existence of any such stacked limits.

184.    Nationwide did so, despite knowing of, recklessly disregarding, or failing to investigate, evaluate, and inform itself of its failure to comply with Subsection (H).

---

[3] *See also cases cited in Nardelli,* 277 P.3d at 800 ¶ 55: *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 370 N.E.2d 941 (Ind. App. 1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

185.    Nationwide's institutional scheme to misrepresent and conceal stacked UM/UIM coverage from Plaintiff and Class members includes for example its standard practice of sending first party claimants a letter categorically denying stacking and offering them a right to select one policy or coverage. Nationwide did so despite knowing it could not amend its insurance contracts' lack of anti-stacking language by post-loss correspondence. Nationwide also sent those letters, as a standard practice, without regard to whether the right to select notice language was timely under Subsection (H). Nationwide's intent and hope was that claimants receiving those letters would believe they had no right to stacking under Arizona law and no need to consult with legal counsel in that regard.

186.    Nationwide, therefore, acted in bad faith toward Plaintiff and the Class.

187.    Plaintiff and the Class seek as compensatory damages the value of their unpaid UM/UIM stacking benefits under Arizona law.

188.    Nationwide's conduct as to Plaintiff and the Class was aggravated, outrageous and it consciously disregarded an unjustifiably substantial risk of significant harm to its insureds who are Class members.

189.    Nationwide is, therefore, liable to Plaintiff and the Class for punitive damages, which can be proven with common evidence.

190.    This claim arises out of contract and Plaintiff and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, both individually and on behalf of the Class, demands a trial by jury on all claims so triable, and respectfully requests that the Court (i) certify the proposed Class under Federal Rules of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4) for declaratory relief, injunctive relief, damages, and/or the determination of common issues, (ii) designate Plaintiff as representative of the Class, (iii) appoint Robert Carey or Hagens Berman as Class Counsel, and (iv) enter judgment in Plaintiff's favor against Nationwide including the following relief:

A.    A declaratory judgment that Plaintiff and the Class are entitled to stack UM/UIM coverages for multiple insured vehicles under the Nationwide Policies; that Nationwide is required to fully disclose and not misrepresent or conceal the availability of or potential for stacked coverages to them; that any signed releases in exchange for payment of UM or UIM limits are void and unenforceable for lack of consideration, unconscionability, or violation of Arizona law; and that Nationwide is required to search and reopen its closed claim files to adequately investigate, reasonably evaluate, and promptly pay stacked UM or UIM benefits.

B.    Compensatory damages for the Class in an amount to be proven at trial.

C.    Punitive damages as permitted by law.

D.    An award of Plaintiff's attorney's fees pursuant to any applicable authority including but not limited to A.R.S § 12-341.01.

E.    Statutory interest pursuant to A.R.S. § 20-462(A).

F.    Costs and expenses incurred herein to the maximum extent permitted by law.

G.    Pre-judgment and post-judgment interest to the maximum extent permitted by law.

H.    Such other relief as the Court deems just and proper.

Dated: August 27, 2024                    Respectfully submitted by,

                                          HAGENS BERMAN SOBOL SHAPIRO LLP

                                          By: *s/ Robert. B. Carey*
                                              Robert B. Carey
                                              John M. DeStefano
                                              E. Tory Beardsley
                                              11 West Jefferson Street, Suite 1000
                                              Phoenix, Arizona 85003
                                              Telephone: (602) 840-5900
                                              Facsimile: (602) 840-3012
                                              Email:    rob@hbsslaw.com
                                                        johnd@hbsslaw.com
                                                        toryb@hbsslaw.com

125792452.1                                          CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE SLAVICEK LAW FIRM
Brett L. Slavicek (SBN 019306)
James Fucetola (SBN 029332)
Justin Henry (SBN 027711)
5500 North 24th Street
Phoenix, Arizona 85016
Telephone: (602) 285-4435
Facsimile: (602) 287-9184
Email:    brett@slaviceklaw.com
          james@slaviceklaw.com
          justin@slaviceklaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

125792452.1