**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Lisa A Nutt,

Plaintiff,

v.

Nationwide Insurance Company of America,

Defendant.

No. CV-24-02228-PHX-ROS

**ORDER**

Before the Court is Defendant Nationwide Insurance Company of America's Motion for Judgment on the Pleadings, (Doc. 31), to which Plaintiff Lisa Nutt filed a Response, (Doc. 34), and Defendant filed a Reply, (Doc. 35). Also before the Court is Plaintiff's Motion for Judgment on the Pleadings re Defendant's Fraud Counterclaim, (Doc. 36), to which Defendant filed a Response, (Doc. 37), and Plaintiff filed a Reply, (Doc. 40). Both Motions will be decided without oral argument. *See* LRCiv 7.2(f).

For the reasons that follow, the Court will deny Defendant's Motion for Judgment on the Pleadings and grant Plaintiff's Motion for Judgment on the Pleadings.

## I.    BACKGROUND

### A. Complaint

For the purpose of resolving Defendant's Motion for Judgment on the Pleadings, the operative facts accepted as true from the Complaint are what follows.

On August 11, 2021, Plaintiff Lisa A. Nutt was severely injured in an accident between a car and the motorcycle on which she was a passenger. The motorcycle driver had no liability insurance applicable to the accident. The car driver had two auto insurance

policies with GEICO providing a total coverage limit of $325,000. GEICO, on the car driver's behalf, settled with Plaintiff for payment of the $ 325,000 limit. Given the severity of her injuries, Plaintiff's damages exceeded the amount of liability insurance available to the car driver. Thus, the car driver was an underinsured motorist ("UIM") as to Plaintiff.

Defendant Nationwide Insurance Company of America ("Nationwide"), Plaintiff's auto insurer, was notified of the accident and opened a claim. On October 15, 2021, Plaintiff's then-counsel sent Nationwide a letter referencing Plaintiff's claim number and advising that Plaintiff was injured in an accident. On July 28, 2022, Plaintiff's then-counsel submitted a demand to Nationwide for "the immediate tender of all applicable [UIM] policy limits" under Plaintiff's personal auto insurance policy ("Policy"), along with a police report from the accident and medical records and bills. Plaintiff's damages attributable to both tortfeasors' fault in the accident exceeded the combined amounts of their bodily injury liability coverage and Plaintiff's UIM coverages for all her insured vehicles combined.

Plaintiff's Policy with Nationwide covered six vehicles, with each vehicle's coverage providing UIM benefits of $25,000 per person per accident. In the "Underinsured Motorists Coverage" endorsement to Plaintiff's Policy, Nationwide agreed as follows:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":
> 1. Caused by an accident; and
> 2. Sustained by an "insured."

Nowhere in the Policy did it expressly prohibit Plaintiff's ability to combine, or "stack," her multiple UIM coverages for her six vehicles under the Policy when submitting an accident claim to Nationwide for UIM benefits. Furthermore, even if stacking multiple vehicle coverages had been prohibited, the Policy also failed to include language notifying insureds of their right to select which vehicle's coverage to apply when submitting an accident claim.

On August 24, 2022, at least ten months after receiving notice of Plaintiff's accident, Nationwide acknowledged receipt of Plaintiff's UIM claim, disclaimed any obligation to

permit Plaintiff to stack UIM coverages from her six vehicles, and informed Plaintiff of her right to select which vehicle's UIM coverage applied to her claim.

On September 29, 2022, Nationwide tendered the UIM coverage limit of $25,000 on only one of Plaintiff's insured vehicles. Accompanying the payment was a Release and Trust Agreement, which Plaintiff signed, conditioning the $25,000 payment on Plaintiff releasing and discharging Nationwide "of and from all claims of whatsoever kind and nature . . . growing out of the . . . [UIM] Coverage" under Plaintiff's Policy resulting from the accident.

**B. Counterclaim**

The operative facts accepted as true from Defendant's Counterclaim are what follows.

The underinsured car driver in the August 2021 accident had two policies with GEICO offering a total of $325,000 in coverage for a claimant in Plaintiff's position. GEICO initially tendered $25,000 on the first policy to Plaintiff, which Plaintiff disclosed to Nationwide. However, Plaintiff never disclosed to Nationwide that GEICO subsequently tendered an additional $300,000 on the second policy to Plaintiff.

On August 9, 2024, Plaintiff sought additional coverage from Nationwide for UM benefits of $150,000 and UIM benefits of $125,000, which Nationwide tendered. Plaintiff never presented Nationwide with proof of medical expenses exceeding $125,000. Had Nationwide been aware of the $300,000 additional payment from GEICO, it alleges it would not have tendered additional UM/UIM benefits without further proof of loss.

**II.     LEGAL STANDARD**

**A. Judgment on the Pleadings**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "functionally identical" to a motion to dismiss for failure to state a claim. *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017). Therefore, the inquiry is "whether the complaint at issue contains sufficient factual matter, accepted as true, to state a claim [to] relief that is plausible on its face." *Harris v. Cnty. of Orange*, 682 F.3d 1126,

- 3 -

1131 (9th Cir. 2012). A claim qualifies as "plausible" only when it does more than establish "a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not enough for a complaint to "plead facts that are merely consistent with a defendant's liability." *Id.* The facts must be such that a court, "draw[ing] on its judicial experience and common sense," can conclude "the defendant is liable for the misconduct alleged." *Id.* at 678. "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010) (quoting *Fajardo v. Cnty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)).

"Courts have discretion in appropriate cases to grant a Rule 12(c) motion with leave to amend, or to simply grant dismissal of the action instead of entry of judgment." *Special Dist. Risk Mgmt. Auth. v. Munich Reins. Am., Inc.*, 562 F. Supp. 3d 989, 994 (E.D. Cal. 2021). The Ninth Circuit has long held "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### B. Arizona Law on Stacking

Arizona's Uninsured/Underinsured Motorist Act ("UMA"), A.R.S. § 20-259.01, "mandates that an insurer offer [uninsured and underinsured motorist] coverage for every automobile liability policy issued to an Arizona insured." *Jackson v. Nationwide Mut. Ins. Co.*, 265 P.3d 379, 382 (Ariz. Ct. App. 2011). When an Arizona insured is in an accident involving an uninsured motorist ("UM") or an underinsured motorist ("UIM"), and the insured submits a claim to their auto insurer for UM/UIM benefits, the UMA requires auto insurers to let insureds claim greater benefits by "stacking," or combining, their UM/UIM coverage limits from multiple vehicles. *See Am. Fam. Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012) (en banc). This requirement applies in both the inter-policy context— multiple vehicles covered under separate policies—and the intra-policy context, where, as

here, multiple vehicles are covered under a single policy.

Subsection (H) of the UMA provides the only means by which an auto insurer can limit an insured's ability to stack UM/UIM coverages from multiple vehicles. *Id.* at 196 ¶ 12. First, insurers must "expressly and plainly limit stacking in the policy"; and second, insurers must provide notice to insureds of their right to select which policy or coverage will apply to their UM/UIM claim, either by giving notice in the policy itself or by written notice to an insured within thirty days after the insurer is notified of the accident. *Franklin v. CSAA Gen. Ins.*, 532 P.3d 1145, 1148 ¶ 11 (Ariz. 2023) (citing A.R.S. § 20-259.01(H)).

Prior to 2023, "there was no binding precedent on the validity of intra-policy stacking"—that is, whether auto insurers had to comply with subsection (H) in order to limit an insureds' ability to stack UM/UIM coverages for multiple vehicles under a single policy. *See Alvarez v. CSAA Gen. Ins. Co.*, No. CV-24-00617-PHX-SMB, 2025 WL 389140, at *6 (D. Ariz. Feb. 4, 2025). In 2021, the United States District Court for the District of Arizona attempted to answer this question on behalf of the Arizona Supreme Court and held that the UMA required auto insurers to permit intra-policy stacking. *See Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. CV-21-00442-PHX-SRB, 2021 WL 6805629, at *5 (D. Ariz. Oct. 19, 2021) (noting the UMA "originally only addressed inter-policy stacking" by permitting insureds to select which "policy" to apply, but subsection (H) was amended in 1997 "to include intra-policy stacking" by permitting insureds to select which "policy *or coverage*" (emphasis added)).

On July 28, 2023, the Arizona Supreme Court decided *Franklin v. CSAA General Insurance*, 532 P.3d 1145 (Ariz. 2023), agreeing with the district court's reasoning in *Heaton* and finding "insurers must comply with [subsection (H)'s] requirements in order to prevent insureds from intra-policy stacking." *Id.* at 1153 ¶ 34.

## III.    ANALYSIS

### A. Defendant's Motion for Judgment on Pleadings

Defendant argues each of Plaintiff's claims fail as a matter of law because: (1) Plaintiff's breach of contract claim is barred by the doctrine of accord and satisfaction and

because Plaintiff released her breach of contract claim; (2) Plaintiff's bad faith claim fails because there are no well-pled allegations that could establish Defendant acted unreasonably in handling her insurance claim; and (3) Plaintiff's claim for declaratory relief fails because it is duplicative of her breach of contract claim. (Doc. 31 at 2.)

Plaintiff asserts the release she executed with Defendant is invalid and there are class-wide fact issues as to her claims for breach of contract and bad faith that can't be resolved at the pleadings stage. (Doc. 34 at 9–17.) Also, Plaintiff argues her declaratory relief claim is not duplicative, is authorized by Federal Rule of Civil Procedure 23(b)(2), and similar relief has previously been granted by a court in this district. (*Id.* at 17–18.)

### 1. Breach of Contract Claim

### a. Accord and Satisfaction

Under common law,[1] an accord and satisfaction "discharges a contractual obligation or cause of action when the parties agree to exchange something of value in resolution of a claim or demand and then perform on that agreement." *Abbott v. Banner Health Network*, 372 P.3d 933, 937 (Ariz. 2016) (quoting *Best Choice Fund, LLC v. Low & Childers, P.C.*, 269 P.3d 678, 686 (Ariz. Ct. App. 2011)). There are four requirements for a valid accord and satisfaction: "(1) proper subject matter, (2) competent parties, (3) assent or meeting of the minds of the parties, and (4) consideration." *Id.* (citing *Vance v. Hammer*, 464 P.2d 340, 343 (Ariz. 1970)). Plaintiff does not dispute the competency of the parties but asserts the other three elements are not met here. (Doc. 34 at 10.)

Here, there are questions of fact regarding whether the accord and satisfaction was

---

[1] Defendant does not argue statutory accord and satisfaction under A.R.S. § 47-3311, which provides in relevant part:

> A. If a person against whom a claim is asserted proves that the person in good faith tendered an instrument to the claimant as full satisfaction of the claim, the amount of the claim was unliquidated or subject to a bona fide dispute and the claimant obtained payment of the instrument, subsections B and C apply.
> B. Unless subsection C applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

Here, as discussed *infra*, Plaintiff has sufficiently stated a claim of bad faith, thus raising a question of fact as to whether the accord and satisfaction was in good faith under A.R.S. § 47-3311(A).

supported by sufficient consideration. Arizona courts "presume written promises are supported by consideration." *Best Choice*, 269 P.3d at 689 (citing A.R.S. § 44-121). But "[t]he settlement of a bona fide dispute" is sufficient consideration only "if it is made fairly and in good faith." *Abbott*, 372 P.3d at 937. As discussed *infra*, Plaintiff has stated a plausible claim that Nationwide acted in bad faith when it failed to offer her stacked UIM benefits. If Nationwide knew or should have known of this obligation when it compromised Plaintiff's claim for UM/UIM coverage, it cannot be said to have settled the dispute fairly and in good faith, making the consideration invalid. Thus, the validity of the accord and satisfaction cannot be resolved on the pleadings alone.

### b. Release

As with Plaintiff's accord and satisfaction, there are factual issues regarding the validity of Plaintiff's release that preclude dismissal on the pleadings. "A release is valid under Arizona law unless there is concealment of material information or mutual or unilateral mistake." *Dorazio v. Allstate Fire & Cas. Ins. Co.*, No. CV-23-00017-PHX-KML, 2025 WL 1652003, at *13 (D. Ariz. June 11, 2025) (citing *Hendricks v. Simper*, 539 P.2d 529, 532–34 (Ariz. Ct. App. 1975)). Under Arizona law, insurers are required to disclose "all pertinent benefits [and] coverages" to claimants. Ariz. Admin. Code R20-6-801(D)(1). As the court explained in *Dorazio*:

> An insurer's duty to provide accurate information to its insured is well-established. Although "an insurer is not required to explain every fact and provision without limitation . . . the duty of good faith encompasses some obligation to inform the insured about the extent of coverage and his or her rights under the policy and to do so in a way that is not misleading."

2025 WL 1652003, at *12 (quoting *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 277 P.3d 789, 800 (Ariz. Ct. App. 2012)).

Plaintiff alleges Nationwide did not comply with the requirements of the UMA by (1) not expressly and plainly limiting stacking in the Policy and (2) not providing timely notice of Plaintiff's right to select which coverage applies to her claim, so—as a matter of law—Nationwide was not permitted to limit stacking on Plaintiff's claim. At the time Nationwide settled Plaintiff's UIM claim, there was no binding precedent in state courts

regarding the UMA's applicability in the intra-policy context. But nearly a year before Nationwide settled, the United States District Court for the District of Arizona suggested how the Arizona Supreme Court might resolve the UMA's ambiguities. *Heaton*, 2021 WL 6805629, at *6; *see Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) ("Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." (quoting *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986))).

In *Franklin*, the Arizona Supreme Court later adopted *Heaton*'s reasoning and found the UMA applied in the intra-policy context. Moreover, while *Franklin* found A.R.S. § 20-259.01(H) "ambiguous," the ambiguous language is allegedly not at issue here:

> Because "coverages purchased" under subsection (H) is "reasonably susceptible to differing interpretations," we find that it is ambiguous. Specifically, the statute's text is unclear as to whether all multi-vehicle policies contain multiple purchased UIM coverages for each vehicle, thereby triggering subsection (H), or whether insurers may define "coverages" purchased in the policy to be a single coverage, thereby avoiding subsection (H)'s application entirely.

532 P.3d at 1150 ¶ 20. In other words, subsection (H) was ambiguous as to whether and how insurers might avoid the UMA's requirements in the intra-policy context, not whether the UMA applied in the intra-policy context at all. Indeed, the Arizona Supreme Court had little trouble determining that § 20-259.01(H) applied to multiple vehicle coverages under a single policy, as the legislature's 1997 amendment—changing "policy" to "policy or coverage"—demonstrated such intent, and the few cases offered in opposition all predated the UMA's 1997 amendment. *See id.* at 1149 ¶¶ 14-17.

In any event, the highest state court does not have to resolve a statute's ambiguities before that law can bind those subject to it. And unlike in the criminal or quasi-criminal context, a civil litigant is not entitled to challenge a law as unconstitutionally vague, *cf. Sessions v. Dimaya*, 584 U.S. 148, 155–56 (2018), or to benefit from the rule of lenity and the application of their preferred interpretation of the law, *cf. Bittner v. United States*, 598 U.S. 85, 101 (2023). Even before the Arizona Supreme Court clarified the law in *Franklin*, Nationwide could not limit intra-policy stacking without expressly prohibiting it in the

Policy, and Nationwide allegedly had a duty to disclose the aggregate stacked limits of Plaintiff's multiple UM/UIM coverages when settling her claim. *See* Ariz. Admin. Code R20-6-801(D)(1). Thus, the validity of Plaintiff's release turns on whether Nationwide concealed this information from Plaintiff as she has alleged, and this determination involves questions of fact regarding Nationwide's knowledge of its duty to permit intra-policy stacking that cannot be resolved on the pleadings.

Defendant, quoting *Alvarez*, 2025 WL 389140, at *5, argues Plaintiff "simply cannot avoid that she agreed to the release while represented by competent counsel, who clearly were in a position to know the longstanding history of stacking law in Arizona and 'had the option to reject the check and file a lawsuit' at the time." (Doc. 31 at 11.) But the court in *Alvarez* did not rest its holding exclusively on this ground:

> Therefore, CSAA's tender of the $100,000 as representative of the limits under Plaintiff's Policy would not automatically amount to a violative misrepresentation. And no evidence exists on the record to show that CSAA did misrepresent the terms of the Policy. Additionally, Plaintiff had the option to reject the check and file a lawsuit, but instead opted to negotiate and accept the $100,000. Therefore, the complained of noncompliance with the A.A.C. as it relates to the 2022 settlement check lacks merit.

2025 WL 389140, at *5. In other words, the court in *Alvarez* held the release was valid on summary judgment because there was simply no admissible and undisputed evidence that the insurer misrepresented the availability of stacking under its insurance policy. But here, the well-pled allegations in Plaintiff's Complaint are sufficient to plausibly establish Nationwide executed the release in bad faith by knowingly or recklessly failing to disclose the availability of stacking under the Policy. At the very least, Plaintiff must be permitted discovery on this issue before the Court can determine, as a matter of law, if Plaintiff's release is valid and bars her breach of contract claim.

### 2. Bad Faith Claim

Under Arizona law, "every insurance contract . . . includes an implied covenant of good faith and fair dealing." *Montoya Lopez v. Allstate Ins. Co.*, 282 F. Supp. 2d 1095, 1100 (D. Ariz. 2003). "The tort of bad faith arises when the insurer 'intentionally denies, fails to process or pay a claim without a reasonable basis.'" *Zilisch v. State Farm Mut.*

*Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000) (quoting *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981)).

To establish a claim of bad faith, a plaintiff must show "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood v. Liberty Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz. July 9, 2012) (citing *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1267–68 (Ariz. 1992)). "The first inquiry involves an objective analysis that focuses on whether the insurer acted unreasonably, while the second involves a subjective analysis as to 'whether the insurer knew that its conduct was unreasonable or acted with such reckless disregard that such knowledge could be imputed to it.'" *Young v. Allstate Ins. Co.*, 296 F. Supp. 2d 1111, 1115 (D. Ariz. 2003) (quoting *Deese*, 838 P.2d at 1268) (emphasis omitted). "An insurer may avoid liability for bad faith by showing that the claim is fairly debatable," but "its belief in fair debatability is a question of fact to be determined by the jury." *Montoya Lopez v. Allstate Ins. Co.*, 282 F. Supp. 2d 1095, 1100 (D. Ariz. 2003) (citation modified).

Defendant argues Plaintiff's bad faith claim fails under either (1) a breach-of-contract theory or (2) a claim-mishandling theory. As to the first theory, Defendant argues Plaintiff's bad faith claim fails because she cannot demonstrate Nationwide breached its contract with her. (Doc. 31 at 9.) Defendant's argument fails simply because, as previously discussed, Plaintiff's Complaint sufficiently states a claim for breach of contract.

As to the claim-mishandling theory, Defendant argues Plaintiff's bad faith claim fails because "there are no well-pled factual allegations that Nationwide America engaged in bad faith when it handled [Plaintiff's] claim" and, as a matter of law, "Nationwide America's handling of [Plaintiff's] claim was consistent with Arizona law at the time" before *Franklin* was decided. (*Id.* at 9–10.) But Defendant's assertion that its handling of Plaintiff's claim was consistent with Arizona law before *Franklin* is categorically incorrect. The Arizona Supreme Court's decision in *Franklin* did not change the requirements of A.R.S. § 20-259.01(H); it merely clarified the applicability of those requirements. Both

before and after *Franklin* was decided, the UMA applied to intra-policy stacking. The fact that the UMA's applicability was undecided prior to *Franklin* is some evidence supporting Defendant's position that the claim was fairly debatable. But Plaintiff alleges other facts that Nationwide knew or should have known of this requirement prior to *Franklin*, including Nationwide's previous payments of stacked benefits to insureds when specifically demanded, (Doc. 1 ¶¶ 104–05), its awareness of other Arizona auto insurers that "drafted their auto policies (including single and multi-vehicle policies) to notify their insureds in writing of the right to select which policy or coverage will apply" in compliance with § 20-259.01(H), (*id.* ¶¶ 81–82), and its receipt of "legal advice that its policy language and/or failure to give proper notice violated Arizona law," (*id.* ¶ 87). These allegations distinguish this case from *Alvarez*, which was decided on summary judgment after the only evidence the plaintiff offered to support his bad faith claim was "conjecture and speculation about what he believes [his insurer] did." 2025 WL 389140, at *7. Thus, Nationwide's belief that Plaintiff's claim was fairly debatable prior to *Franklin* presents a question of fact that cannot be resolved solely on the pleadings. *See Montoya Lopez*, 282 F. Supp. 2d at 1100.

### 3.  Declaratory Relief Claim

The Declaratory Judgment Act ("DJA") states that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The DJA is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

Although the exercise of jurisdiction under the DJA is at the discretion of the district court, it "cannot decline to entertain such an action as a matter of whim or personal disinclination." *Gov't Emp. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). When determining whether to retain jurisdiction over a DJA action, the district court "must make a sufficient record of its reasoning to enable appropriate appellate review." *Id.* at 1225.

The "*Brillhart* factors" are the "philosophic touchstone" guiding a district court's analysis when considering whether to exercise jurisdiction under the DJA. *R.R. Street & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Dizol*, 133 F.3d at 1225). The three *Brillhart* factors are: "(1) avoiding needless determinations of state-law issues; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation." *Id.* (citation modified). These "factors are not exhaustive," *Dizol*, 133 F.3d at 1225 n.5, and district courts must also "balance concerns of judicial administration, comity, and fairness to the litigants," *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991). When a DJA action is "derivative of the included contract claim, the district court may read the declaratory relief claim as part of the breach of contract claim." *HM Hotel Props. v. Peerless Indem. Ins. Co.*, 874 F. Supp. 2d 850, 855 (D. Ariz. 2012) (citing *Madrid v. Concho Elementary Sch. Dist. No. 6 of Apache Cnty.*, 439 F. App'x 566, 567 (9th Cir. 2011)); *see Infante v. Namecheap Inc.*, No. CV-25-02537-PHX-DJH, 2025 WL 2097907, at *6 (D. Ariz. July 25, 2025) ("When a breach of contract claim would resolve all questions regarding contract interpretation, 'declaratory relief may be duplicative and inappropriate.'" (quoting *Fine v. Kansas City Life Ins. Co.*, 627 F. Supp. 3d 1153, 1164 (C.D. Cal. 2022))).

Defendant requests the Court dismiss Plaintiff's claim for declaratory relief as duplicative of her breach of contract claim. (Doc. 31 at 10.) Defendant argues Plaintiff's claim for declaratory relief does not request future or prospective relief because Plaintiff only alleges she "*was*" insured with Nationwide and "never pleads an intent to remain with Nationwide going forward." (Doc. 35 at 9.) Furthermore, Defendant suggests Plaintiff lacks standing under Federal Rule of Civil Procedure 23(b)(2)[2] to seek future declaratory relief on behalf of the prospective class. (*Id.* at 9 n.6.)

Whether Plaintiff has standing to bring a class action under Rule 23(b)(2) is not at issue on these Motions. As such, it is currently "not clear that the declaratory relief claim

---

[2] "A class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

is entirely duplicative of the contract claim," so dismissal is inappropriate. *E.g.*, *Shumway v. Allstate Vehicle & Prop. Ins. Co.*, No. CV-23-00699-PHX-DLR, 2024 WL 3376087, at *5 (D. Ariz. July 11, 2024).

### B. Plaintiff's Motion for Judgment on Pleadings

Plaintiff moves for judgment on the pleadings as to Count Two of Nationwide's Counterclaim. In Count Two, Nationwide alleges Plaintiff committed fraud by failing to disclose the additional $300,000 liability settlement she received from GEICO on behalf of the underinsured car driver when she submitted a claim for UM/UIM benefits to Nationwide. (Doc. 17 at 28–29.) Nationwide alleges it would not have "paid and/or tendered additional UM/UIM benefits" had it known Plaintiff recovered the additional $300,000 from GEICO. (*Id.* at 29.)

Plaintiff argues Nationwide's fraud claim fails because: (1) Nationwide suffered no harm from tendering the $125,000 in stacked UIM benefits because Plaintiff never cashed the check; (2) under Arizona's comparative fault system, the underinsured car driver's settlement payment does not give Nationwide a setoff on its UM liability regarding the uninsured motorcyclist; and (3) under Arizona's Uninsured Motorist Act ("UMA") and Nationwide's Policy, "UM and UIM claims are separate and distinct, meaning the car driver's liability insurance is only relevant to Plaintiff's UIM claim." (Doc. 36 at 2–3.) Taken together, Plaintiff argues Nationwide's counterclaim fails to meet all nine elements of common law fraud. Nationwide responds that Count Two pleads a claim of fraudulent concealment, not common law fraud, and that all the elements of a fraudulent concealment claim are met. (Doc. 37 at 4–5.)

Under Arizona law, "there are three distinct classes of fraud: misrepresentation, concealment, and non-disclosure." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 34 n.22 (Ariz. 2002).

Common law fraud, or fraudulent misrepresentation, requires "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner

reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; and (9) the hearer's consequent and proximate injury." *Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 562 (Ariz. Ct. App. 1998).

Arizona courts also recognize the tort of fraudulent concealment: "One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering." *Wells Fargo*, 38 P.3d at 34 (quoting Restatement (Second) of Torts § 550 (1976)). Liability for fraudulent concealment "requires knowledge of the false information and action by the defendant that intentionally prevented the plaintiff from finding the truth." *Id.* "Unlike simple nondisclosure, a party may be liable for acts taken to conceal, mislead or otherwise deceive, even in the absence of a fiduciary, statutory, or other legal duty to disclose." *Id.* at 21.[3]

Lastly, "liability for nondisclosure occurs under § 551 of the Restatement (Second) of Torts." *Id.* at 34 n.22. Under the Restatement, liability for nondisclosure lies against "[o]ne who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction . . . if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question." Restatement

---

[3] Defendant instead relies on a five-element test for fraudulent concealment first set forth in *Coleman v. Watts*, 87 F. Supp. 2d 944 (D. Ariz. 1998). These elements are:
> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Id.* at 951–52 (citing *Morrison v. Goodspeed*, 68 P.2d 458, 462 (Colo. 1937)). Courts in the District of Arizona have continued to apply this five-element test, even after the Arizona Supreme Court announced its own standard for the fraudulent concealment in *Wells Fargo*. Here, the Court is exercising diversity jurisdiction, so it applies the more authoritative and recent *Wells Fargo* standard. But ultimately, the difference between the two tests is largely irrelevant here. *Cf. Hale v. Norcold Inc.*, No. CV-18-03597-PHX-SPL, 2019 WL 3556882, at *3 (D. Ariz. Aug. 5, 2019) (dismissing a fraudulent concealment claim under *Wells Fargo* "because the Complaint fails to allege that the Plaintiffs were party to a transaction with the Defendants").

- 14 -

(Second) of Torts § 551(1) (A.L.I. 1977). One party to a business transaction has a duty to disclose to the other party (1) "matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them," (2) "matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading," (3) "subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so," (4) "the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him," and (5) "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." *Id.* § 551(2).

Because Plaintiff's failure to disclose the $300,000 payment from GEICO is the alleged material misrepresentation, the Court construes Count Two of Nationwide's Counterclaim—simply titled "Fraud"—as intending to state a claim of fraudulent concealment. Plaintiff argues Nationwide has not pled a fraudulent concealment claim because Count Two does not use the words "conceal" or "concealment" but instead alleges Plaintiff's "undisclosed receipt of the additional $300,000 from GEICO was a material misrepresentation." (*See* Doc. 17 at 28–29.) Regardless of the precise wording, the Court finds Nationwide's allegations—that Plaintiff "knowingly and deliberately withheld" material information from Nationwide to induce the payment of additional UM/UIM benefits—can be fairly characterized as either "concealing" or failing to disclose material information rather than making an affirmative misrepresentation.[4]

Even if Count Two is considered a fraudulent concealment claim, Plaintiff argues it fails to state a claim because (1) "the GEICO payment is not material to the amount of UM benefits owed," and (2) Plaintiff "did nothing to prevent Nationwide from acquiring any such information." (Doc. 40 at 10–11.)

---

[4] For example, Defendant does not allege Plaintiff affirmatively communicated that she had not received the payment from GEICO, which would be a misrepresentation.

As to the second point, the Court rejects Plaintiff's strict interpretation of whether she "prevented" Defendant from acquiring material information. Plaintiff asserts "[n]othing prevented Nationwide from learning how much GEICO paid," as "Nationwide simply could have asked" Plaintiff or GEICO for the information. (Doc. 40 at 11.) But adopting this reasoning—which Plaintiff fails to support with relevant authority—would conceivably bar every fraudulent concealment claim where the defrauded party had some conceivable alternative means of acquiring the information, even if the defrauded party lacked notice such information might exist. Rather, the Court reasonably interprets "prevents" in this context to simply mean the concealment "hinders" or "impedes" Defendant's acquisition of the material information. *See Prevent*, *Black's Law Dictionary* (12th ed. 2024).

In any event, the Court agrees that a claim of fraudulent concealment requires *some* affirmative act beyond failing to disclose material information. *See Wells Fargo*, 38 P.3d at 34 n.22 ("Concealment necessarily involves an element of non-disclosure, but it is the intentional act of preventing another from learning a material fact that is significant, and this act is always the equivalent of a misrepresentation."). For example, if insureds were contractually obligated or otherwise required when submitting a UM/UIM claim to disclose any payments received from other insurers or to attest as to their outstanding damages not covered by other benefits payments, Plaintiff's silence might constitute concealment rather than mere nondisclosure. *See Coleman*, 87 F. Supp. 2d at 952 ("When one conveys a false impression by the disclosure of some facts and the concealment of others, such concealment is in effect a 'false representation.'"); *see also Wells Fargo*, 38 P.3d at 36 ("Any words or acts which create a false impression covering up the truth, or which remove an opportunity that might otherwise have led to the discovery of a material fact—as by floating a ship to conceal the defects in her bottom, sending one who is in search of information in a direction where it cannot be obtained, or even a false denial of knowledge by one in possession of facts—are classed as misrepresentation, no less than a verbal assurance that the fact is not true." (quoting William L. Prosser, Handbook of the Law of

Torts § 106 at 695 (4th ed. 1971))). But, as currently pled, Count Two does not allege facts from which the Court can import an affirmative misrepresentation or act of concealment by Plaintiff to support a claim of fraudulent misrepresentation or concealment.

Furthermore, taking all Defendant's allegations into account, they are insufficient to state a fraudulent nondisclosure claim, which requires showing Plaintiff had a duty to disclose the payments from Geico when requesting additional coverage from Nationwide.[5] *See Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 989 (D. Ariz. 2012) ("Because there are no facts alleged to show that Defendant actively concealed the appraisal or its defects from Plaintiffs, the common law fraud and fraudulent inducement claims are limited to simple nondisclosure and necessarily require a duty to disclose [sic].")." Thus, Count Two of Defendant's Counterclaim will be dismissed with leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

## IV.    CONCLUSION

Based on the foregoing, Plaintiff's Complaint sufficiently states claims for breach of contract, bad faith, and declaratory relief, and Defendant's Counterclaim fails to state a claim of fraudulent concealment or nondisclosure. Accordingly,

**IT IS ORDERED** Defendant Nationwide Insurance Company of America's Motion for Judgment on the Pleadings (Doc. 31) is **DENIED**.

…

…

…

…

…

…

…

…

---

[5] Notably, Plaintiff's Policy allegedly permitted Nationwide to void the Policy and deny coverage if Plaintiff "knowingly, or unknowingly concealed, misrepresented or omitted any material fact or engaged in fraudulent conduct at the time the application was made or at any time during the policy period." (Doc. 16 at 24.)

**IT IS FURTHER ORDERED** Plaintiff's Motion for Judgment on the Pleadings re Defendant's Fraud Counterclaim (Doc. 36) is **GRANTED**. Count Two of Defendant's Counterclaim is **DISMISSED WITH LEAVE TO AMEND**. If Defendant chooses to amend, it must file an amended counterclaim within fourteen days of this Order, and Plaintiff shall respond to that counterclaim by the deadline required by the Federal Rules of Civil Procedure.

Dated this 18th day of March, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge